UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EDWARD REARDON,                                      Index No. 20-cv-4290

                    Plaintiff,

                                                                           **COMPLAINT**

      -against-

                                                                               *Jury Trial Demanded*

NEW YORK CITY FIRE DEPARTMENT
and CITY OF NEW YORK,

                    Defendants.
------------------------------------------------------------------X

        Plaintiff EDWARD REARDON, on behalf of himself and all others similarly situated, by and through his attorneys, the BELL LAW GROUP PLLC, respectfully alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. The Firefighters of the Defendant New York City Fire Department ("FDNY") are known as "New York's Bravest". They put their lives on the line to protect all New Yorkers from fires, natural disasters, terrorist attacks, and other dangerous hazards. The residents of the City of New York depend on the Firefighters of the FDNY to keep them safe and alive.

2. As a result of their sacrifices for the City, Firefighters often find themselves injured while responding to fires, or sick with cancer or other diseases. Indeed, after the 9/11 Terrorist attacks, many Firefighters were diagnosed with cancer, and ultimately died.

3. Firefighters who are injured or sick can request to remain working in a Light Duty or Modified Duty capacity. Firefighters in these positions often have a disability

1

      which prevents them from working in the field, but which allows them to work other jobs, such as training and other jobs in the firehouse. Disabled Firefighters, like all non-disabled Firefighters, are capable of working overtime in their positions.

4. The FDNY, however, has a wide standing of policy of limiting overtime opportunities to disabled firefighters on Light Duty or Modified Duty. The FDNY also denies promotions to disabled Firefighters who work in these same positions, while granting promotions to non-disabled Firefighters.

5. Plaintiff Edward Reardon ("Plaintiff") was subjected to the FDNY's unlawful policies. Plaintiff commenced his employment with the FDNY in July 2002, and advanced his way to Fire Lieutenant. In January 2017, Plaintiff was diagnosed with Thyroid Cancer which required him to undergo surgery. Plaintiff was ultimately deemed disabled as a result of his cancer but was cleared by the FDNY to work in a Light Duty capacity.

6. To Plaintiff's surprise, the FDNY restricted his ability to earn overtime based solely on his disability and his Light Duty status. In January 2019 and March 2019, Plaintiff contacted the FDNY EEO Office regarding his loss of overtime and his pending promotion to Fire Captain. The FDNY took no action in response to Plaintiff's complaints.

7. On April 10, 2019, the FDNY promoted a class of Fire Lieutenants to Fire Captain. Plaintiff, however, was not promoted, on the basis his disability and his complaints to the FDNY's EEO Office. The FDNY claimed that in his capacity as

a disabled Firefighter, he was not eligible for a promotion. However, the FDNY subsequently promoted Plaintiff to Fire Captain, but failed to pay him back pay.

8. Plaintiff was forced to retire from the FDNY has a result of the discrimination and retaliation he faced. He seeks to be compensated for the FDNY's unlawful actions, and to protect all disabled Firefighters currently working at the FDNY in a Light Duty or Modified Duty status, to ensure that they are afforded overtime and promotions.

9. In denying Plaintiff and other Disabled Firefighters overtime and promotions on the basis of their disabilities and Light Duty and Modified Duty Assignments and for their lawful complaints of discrimination, the FDNY discriminated and retaliated against Plaintiff and other Disabled Firefighters on the basis of their disabilities, in violation of the 42 U.S.C. § 12101, the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

## NATURE OF THE CLAIMS

10. Plaintiff brings this action on behalf of himself and similarly situated individuals to recover for Defendants' numerous violations of the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL).

11. Named Plaintiff's claims under the ADA, NYSHRL and NYCHRL are brought as a class action, on behalf of himself and on behalf of all other similarly situated persons who were/are employed by the FDNY as firefighters designated for Light Duty or Modified Duty as the result of a disability ("Disabled Firefighters")

12. and/or other similar positions who were/are not allotted overtime by the FDNY, denied promotions due to their disabilities, and/or denied promotions due their complaints of discrimination. Named Plaintiff and all such other similarly situated persons are jointly referred to herein as the "New York Class."

12. Members of the New York Class are similarly situated because, during the New York Class Period, they were all subject to the FDNY's common policy and/or practice of denying overtime to Disabled Firefighters, not promoting Disabled Firefighters, and denying promotions to Disabled Firefighters based on their protected activities.

13. Additionally, members of the New York Class were/are all employed by the FDNY as Disabled Firefighters.

## JURISDICTION AND VENUE

14. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 & 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendants.

15. Venue is proper in this case pursuant to 28 U.S.C. § 1391 because (1) the Defendants are located in Kings County, New York, which is located in the Eastern District of New York, and (2) some of the events which give rise to the Plaintiff's claims took place in Kings County, which is located in the Eastern District of New York.

16. All conditions precedent to filing suit have been fulfilled. On August 23, 2019, Plaintiff filed a timely Charge of Discrimination with the New York State Division of Human Rights. The Charge of Discrimination was cross-filed with the U.S. Equal Employment Opportunity Commission. On June 17, 2020, the EEOC issued Plaintiff a Right to Sue Notice. Annexed hereto, and hereby incorporated into this Complaint, as Exhibit A, is a copy of Plaintiff's Charge of Discrimination and Notice of Right to Sue.

## PARTIES

17. Plaintiff EDWARD REARDON ("Plaintiff") is a resident and domiciliary of Westchester County, NY. At all times relevant to the complaint, Plaintiff was an "employee," of the FDNY and the City as that term is defined by the ADA, NYSHRL and NYCHRL.

18. Defendant NEW YORK CITY FIRE DEPARTMENT ("FDNY") was and still is a municipal corporation incorporated under and by virtue of the laws of the State of New York. Its principal place of business is located at 9 Metrotech Center, Brooklyn, New York 11201. At all times relevant to the complaint, was Plaintiff's "employer," as that term is defined by the ADA, NYSHRL and NYCHRL.

19. Defendant CITY OF NEW YORK ("City") was and still is a municipal corporation incorporated under and by virtue of the laws of the State of New York. Its principal place of business is located at City Hall Park, New York, New York 10007. At all times relevant to the complaint, was Plaintiff's "employer," as that term is defined by the ADA, NYSHRL and NYCHRL.

## **FACTUAL ALLEGATIONS**

### *Background*

20. In or around July, 2002, Plaintiff began his employment with the FDNY as a Probationary Firefighter. The FDNY is a department which is controlled, funded and managed by the City.

21. Upon completion of a one (1) year probationary period, Plaintiff was promoted to the position of Full-Time Firefighter.

22. In or around June, 2009, Plaintiff took the civil service examination for promotion to Supervisory Fire Marshal.

23. In or about April, 2010, Plaintiff was selected off of the eligible list of candidates and was assigned to the FDNY Fire Academy for a period of fourteen (14) weeks to receive training.

24. Upon completion of his training, Plaintiff was certified as a Fire Marshal. He was certified as a New York State Fire Instructor 1 in 2012 and a New York State Fire Instructor 2 in 2018. Plaintiff is also certified as a New York State Level 2 Fire Investigator.

25. On or about November 21, 2009, Plaintiff took the civil service examination for promotion to Fire Lieutenant.

26. In or around April 2012, Plaintiff was selected off of the eligible list of candidates and was assigned to the FDNY Fire Academy for a period of six (6) weeks to receive training.

27. On or about December 6, 2014, Plaintiff took the civil service examination for promotion to Fire Captain.

28. The Notice of Examination issued by the City of New York Department of Citywide Administrative Services, Application Unit, provided the eligibility requirements necessary for an employee seeking the position of Fire Captain. Those requirements did not prohibit eligible employees on light-duty from receiving a promotion.

29. Prior to sitting for the examination, Plaintiff devoted significant time, energy, and fiscal resources towards studying and preparation, studying for at least two (2) years, often in excess of three (3) hours per day.

30. Plaintiff scored an 82.063 on the examination and was number two hundred forty-four (244) on the list of eligible candidates.

### *Plaintiff's Transition to Light Duty Status*

31. In or around January 2017, Plaintiff was diagnosed with Thyroid Cancer.

32. In or about February 2017, Plaintiff had surgery remove the cancer and his lymph nodes, which were infected as a result of the cancer.

33. After surgery, Plaintiff was out of work on FDNY-approved medical leave for approximately five (5) months. Upon his return, Plaintiff was approved for light-duty assignment and was assigned to the office at the fire house.

34. In or around August 2017, Plaintiff was assigned to the Fire Academy as an "Extrication/Subway Unit Instructor" on Temporary Assignment.

### *The FDNY's Refusal to Allot Overtime to Light Duty Firefighters, Including Plaintiff*

35. From in or around August 2017, to in or around February 2018, Plaintiff received overtime opportunities consistent with other employees in his command. His tour of duty was four (4) days a week, ten (10) hours per day.

36. In or around December 2018, the FDNY's Medical Office approved Plaintiff for his disability pension as a result of his Thyroid Cancer diagnosis and the symptoms associated therewith. Despite his disability, Plaintiff, having been determined by the FDNY to be fit for light-duty assignment, desired to continue his employment.

37. In February 2018, the FSNY changed Plaintiff's tour of duty to five (5) days per week, eight (8) hours per day.

38. Plaintiff's new tour of duty significantly restricted his ability to work overtime.

39. Plaintiff was qualified to work overtime, as he done so successfully prior to the FDNY's change in policy.

40. Plaintiff's non-disabled employees in his command were not so restricted and often received in excess of five hundred (500) hours of overtime per year.

41. Plaintiff's similarly situated co-workers who are not disabled are allotted nearly unrestricted overtime.

42. The FDNY maintained a policy of imposing overtime restrictions on light-duty and disabled employees to "shake the tree" and force such employees to retire, despite being fully capable of performing the requirements of their positions.

43. Plaintiff was, and continues to be, a victim of this unlawful policy.

44. The FDNY assigned per diem employees to Plaintiff's command despite those employees being assigned to other commands, further preventing Plaintiff from receiving overtime opportunities.

45. As a result of the FDNY's refusal to allot Plaintiff overtime opportunities, he has suffered significant financial hardship.

### *Plaintiff's Request for a Reasonable Accommodation*

46. On or about December 6, 2018, Plaintiff requested a Reasonable Accommodation with the FDNY's Equal Employment Opportunity ("EEO") Office as a result of his disability. Plaintiff signed a HIPAA release form and provided the FDNY with all of the necessary medical documentation to support his request.

47. On or about December 6, 2018, the FDNY granted Plaintiff's Reasonable Accommodation request and retained him as an "Extrication/Subway Unit Instructor" on a Permanent Modified duty status.

### *Plaintiff's EEO Activities*

48. In or around January 2019, Plaintiff contacted the FDNY's EEO Office regarding his loss of overtime and his pending promotion to Fire Captain.

49. Plaintiff followed up with the EEO Office in March 2019 regarding his loss of overtime and promotion. The EEO Office ignored Plaintiff's complaints and refused to take any remedial action to rectify his losses.

50. On March 26, 2019, Plaintiff filed a complaint with the EEO Office regarding his pending promotion to Fire Captain.

9

### *Plaintiff's Delayed Promotion to Fire Captain*

51. On or about April 10, 2019, the FDNY promoted a class of Fire Lieutenants to the rank of Fire Captain.

52. The FDNY did not promote Plaintiff to Fire Captain at this time.

53. The FDNY did not promote Plaintiff at this time due to his light-duty status and disability.

54. As of April 10, 2019, Plaintiff met or exceeded all of the eligibility requirements for this merit-based promotion.

55. Plaintiff's similarly situated fellow Fire Lieutenants who were not disabled or on Light Duty were promoted to Fire Captain.

56. Plaintiff's similarly situated fellow Fire Lieutenants who had not engaged in EEO activity were promoted to Fire Captain.

57. If the FDNY had promoted Plaintiff to Fire Captain on April 10, 2019, Plaintiff would have been eligible to take the civil service examination for the position of Battalion Chief on June 18, 2019.

58. Due to the FDNY's unnecessary delay in promoting Plaintiff to Fire Captain, Plaintiff was unable to take the examination for the Battalion Chief position.

59. Plaintiff was required to take the examination in order to receive the promotion to Battalion Chief.

60. The Battalion Chief position pays a higher salary than Plaintiff's Fire Captain position.

61. Plaintiff suffered a significant loss of income as a result of his inability to apply for and receive a promotion to the Battalion Chief position.

62. On or about June 26, 2019, the FDNY's EEO Office advised Plaintiff that he would be considered for the next Fire Captain promotion order. Plaintiff was subsequently promoted to Fire Captain.

63. The FDNY did not promote Plaintiff to Fire Captain retroactive to April 10, 2019.

64. As a result of the FDNY's failure to promote Plaintiff to Fire Captain retroactively, Plaintiff suffered significant loss of income.

### *Constructive Discharge*

65. Plaintiff resigned from the FDNY on February 19, 2020 as a result of the discrimination and retaliation he suffered as outlined above. Plaintiff was unable to continue to work under these conditions, and opted to retire.

### **RULE 23 CLASS ACTION ALLEGATIONS**

66. Plaintiff brings his claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and on behalf of all other similarly situated persons who were/are employed by the FDNY in the State of New York as Disabled Firefighters at any time between September 2017 and the present.

67. The basic job duties of the New York Class were/are the same as or substantially similar to those of the Named Plaintiff, and the New York Class were/are paid in substantially the same manner and under the same common policies, plans and practices as the Named Plaintiff.

68. Upon information and belief, members of the New York Class, like the Named Plaintiff, all have been subject to the same unlawful policies, plans and practices of the FDNY of denying overtime to Disabled Firefighters, not promoting

Disabled Firefighters, and denying promotions to Disabled Firefighters based on their protected activities.

69. During the New York Class Period, the FDNY was fully aware of the duties performed by Named Plaintiff and the New York Class, their disabilities, and that they were subjected to the protection of the ADA, NYSHRL and NYCHRL.

70. As a result of the FDNY's conduct alleged herein, Defendants violated the ADA, NYSHRL and NYCHRL.

71. Defendants' violations of the ADA, NYSHRL and NYCHRL were willful, repeated, knowing, intentional and without a good faith basis, and significantly damaged Plaintiff and the New York Class.

72. As a result of FDNY's conduct, the FDNY is liable to Plaintiff and the New York Class for compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, liquidated damage, injunctive relief, attorney's fees, and any other damages permitted by law pursuant to the above referenced causes of action.

73. Certification of the New York Class members' claims as a class action is the most efficient and economical means of resolving the questions of law and fact common to Plaintiff's claims and the claims of the New York Class. Named Plaintiff has standing to seek such relief because of the adverse effect that the FDNY's unlawful compensation policies and employment practices have had on him individually and on members of the New York Class. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent

adjudications and conflicting obligations. Certification of the New York Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the New York Class and the FDNY.

74. Plaintiff's claims raise questions of law and fact common to the New York Class, including, but limited to:

   a. Whether the FDNY failed to allot overtime to Disabled Firefighters on the basis of their disabilities;

   b. Whether the FDNY failed to promote Disabled Firefighters on the basis of their disabilities; and

   c. Whether the FDNY failed to promote Disabled Firefighters on the basis of their protective activities.

75. These common questions of law and fact arise from the same course of events, and each class member will make similar legal and factual arguments to prove liability.

76. Named Plaintiff is a member of the New York Class that he seeks to represent. Named Plaintiff's claims are typical of the claims of the New York Class. The relief Named Plaintiff seeks for the unlawful policies and practices complained of herein are also typical of the relief which is sought on behalf of the New York Class.

77. Named Plaintiff's interests are co-extensive with those of the New York Class that he seeks to represent in this case. Named Plaintiff is willing and able to represent the New York Class fairly and to vigorously pursue their similar individual claims in this action.

78. Named Plaintiff has retained counsel who is qualified and experienced in employment class action litigation, and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity. The combined interests, experience and resources of Named Plaintiff and his counsel to litigate the individual and New York Class claims at issue in this case satisfy the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4).

79. The FDNY has acted or refused to act on grounds generally applicable to the New York Class, making final injunctive and declaratory relief appropriate with respect to the New York Class as a whole.

80. Injunctive and declaratory relief are the predominant relief sought in this case because they are the culmination of the proof of the FDNY's individual and class-wide liability and the essential predicate for Plaintiff's and the New York Class members' entitlement to monetary and non-monetary remedies to be determined at a later stage of the proceedings.

81. The common issues of fact and law affecting Plaintiff's claims and those of the New York Class members, including the common issues identified above, predominate over any issues affecting only individual claims.

82. A class action is superior to other available means for the fair and efficient adjudication of Named Plaintiff's claims and the claims of the New York Class. There will be no difficulty in the management of this action as a class action.

83. The cost of proving the FDNY's violations of the ADA, NYSHRL and NYCHRL makes it impracticable for Named Plaintiff and the New York Class to pursue their claims individually. Maintenance of a class action promotes judicial

economy by consolidating a large class of plaintiffs litigating identical claims. The claims of the New York Class interrelate such that the interests of the members will be fairly and adequately protected in their absence. Additionally, the questions of law and fact common to the New York Class arise from the same course of events and each class member makes similar legal and factual arguments to prove the FDNY' liability.

84. The New York Class is so numerous that joinder of all members is impracticable. While the exact number of members of the New York Class is unknown to Plaintiff at the present time, upon information and belief, there are at least 40 similarly situated persons Disabled Firefighters and/or in other similar positions during the New York Class Period.

85. Plaintiff is currently unaware of the identities of all New York Class members. Accordingly, the FDNY should be required to provide Plaintiff with a list of all persons employed by the FDNY in similar positions during the New York Class Period, along with their last known addresses, telephone numbers and e-mail addresses so Plaintiff can give the New York Class notice of this action and an opportunity to make an informed decision about whether or not to participate in it.

## CLAIMS FOR RELIEF

86. In denying Plaintiff and the New York Class overtime opportunities on the basis of their disabilities, the FDNY violated the ADA, NYSHRL and NYCHRL.

87. In denying Plaintiff and the New York Class promotions on the basis of their disabilities, the FDNY violated the ADA, NYSHRL and NYCHRL.

88. In denying Plaintiff and the New York Class promotions on the basis of their complaints of discrimination, the FDNY violated the ADA, NYSHRL and NYCHRL.

**WHEREFORE,** the Plaintiff, on behalf of himself and the New York Class, demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, liquidated damage, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that the Court grant the Plaintiff and the New York Class any other relief to which they are entitled, including but not limited to:

1. Declare that the practices complained of herein are unlawful under applicable federal and state law;
2. Enjoin Defendants from continuing the unlawful practices identified herein;
3. Designate this action as a class action pursuant to F.R.C.P. 23;
4. Designate Plaintiff as representative of the New York Class and designate Plaintiff's Counsel as Class Counsel;
5. Determine the damages sustained by Plaintiff and the New York Class as a result of Defendants' violations of the ADA, NYSHRL and NYCHRL, and award those damages against Defendants and in favor of Plaintiff and the New York Class;
6. Enjoin Defendants from engaging in any acts of illegal retaliation;
7. Enjoin Defendants from continuing their unlawful practices;

8. Awarding reasonable attorneys fees and the costs and disbursements of this action;

9. Granting such other and further relief that to the Court seems just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself, New York Class, hereby demands a trial by jury on all issues of fact and damages.

Dated: Garden City, New York
       September 14, 2020

                                                /s/ Paul Bartels
Paul Bartels, Esq.
Jonathan Bell, Esq.
Bell Law Group PLLC
100 Quentin Roosevelt Blvd., Suite 208
Garden City, NY 11530
(516) 280-3008 phone/ (516) 706-4692
*Attorneys for Plaintiff*